by respectfully imposing enhancements of USSG 2K2.1A4B without requiring the government proving this enhancement by preponderance of the evidence, therefore violating the appellant's due process rights. Moreover, this Court was on notice that the ball conclusory PSR lacked reliability, not only from the defense objections, but also from the record. As this Court likely knows better than I, the record of appeal, 9 through 10, included a complaint. And in that complaint, it noted the disorder of the vehicle, it noted the weapon being found on their clothing, and it noted three passengers here in that PSR, of which was objected to. The PSR failed, again, through its ball conclusory statements, to only note two individuals in that vehicle. So the original indictment was the 922G based on the gun? That is correct. And it's revised, and your client pleads to 922G based on the ammunition? That is correct. That does push the gun proximity issue to sentencing lower standard of review, right? 100%. Yes, Your Honor. So you're accepting that this is a constructive possession case, and we're asking, by the preponderance of evidence, did the district court find both knowledge and access? Is that it? That is correct, Your Honor. And I agree with this Court that it is not a, we're not here for an actual possession. We're here for a constructive. The Court even noted that in its findings, which is, I believe, is marked, is page 97 of the record. But as this Court also knows, the district court is required to employ a fact-specific approach. Here, it did not employ, respectfully, by all means, it did not employ a fact. But the PSR wasn't that conclusory. It's based on a police affidavit that puts Sayens, is that how you pronounce the guy's name, the passenger, Sayens? That is correct, Your Honor. In the front seat? That is correct. So they both, everyone, there are a bunch of guns in the car, every single passenger, driver, everybody says, not mine. Why isn't it plausible that the driver knew, because he speeds off, he's got to get tased, that there's this gun under the clothes right behind him? With respect to the PSR, there are three people in the vehicle. The PSR only included two. It failed to mention, one, the fact that there is a passenger in the back seat, and also it failed to mention the fact, which, again, we provided notice to the Court, as well as which is in the complaint. And as this Court knows, that complaint is part of the record and can be considered in total, is there's a third person in the vehicle and the weapon is found underneath clothes next to him. So it's really plausible he hit it once your client gets out of the car. But does that make it implausible that he also, both of them, had knowledge and access? I think the best way to put it is, as this Court, again, knows, just because he's, one, driving a vehicle, dominion and control is insufficient, so we need to move. But then they say he's got a bullet. He has the bullet that goes to the gun. That is, I would respectfully disagree on that. The reason why, and I think it's, I believe it's in Mesa, where it talks about how the shotgun was in the shed on his property, and what was the big connection was the fact that the bullets, the ammunition, the specific ammunition found in his room was identical to that found in the shotgun. Here, there is no link. Oh, it doesn't fit the gun? We're not saying it doesn't fit the gun, Your Honor. I'm saying there is, as this common knowledge knows, 9mm ammunition can be purchased and as different makers throughout this republic, right, you can have ammunition from A, B, and C. There is no tie between that type of ammunition and the type of ammunition found in the weapon. And moreover, as this Court also knows, is the fact that the capacity magazine was in possession of someone else. Again, so we have, the only thing we have, the only evidence we have, Your Honor, is that he is driving the vehicle. That's it. Not weapons in the open. Well, the district court also relied on his behavior of speeding away the first time he tried to stop and then the actions when he finally was stopped. Why should we dismiss those is also relevant of knowledge of or desire not to be caught because of criminal activity. He admitted to the criminal activity, which was having possession of ammunition. And so that is sufficient. You can conclude that. Do you think it would be unreasonable for the judge to say he would not have sped away because there was a bullet in his pocket as compared to being a firearm in the backseat? I'm just saying that the single piece of ammunition seems fairly inconsequential, perhaps, in the judge's mind for the actions that your client took compared to what he actually was convicted for, which was having possession, constructive possession of the firearm. What we don't know is when it comes to the speeding away, who was in that vehicle before and after. And again, it gets to the lack of the reliability of the PSRs because he sped away once. I think that's a fair conclusion. What happened between that hour? Were those individuals in that vehicle before then? And it gets back to the fact that the court is required to apply a fact-specific approach. And respectfully, we do not believe it did so. It concluded, simply because he drove the vehicle, he possessed it. He possessed constructive possession. I guess you're not denying access because he's just feet away. Your whole point is he may not have known. I don't even know if he has access. And the reason being is I think the court, by its desire not to see photos of the destroyed state, agreed that the vehicle was in a disorganized state. And so based on when the appellant offered a photo and the court said it did not desire to see it, I think it is reasonable to conclude that then the court acknowledged that the state of the vehicle was in utter disrepair. And because it's in utter disrepair, one, I don't believe we even have access. Because the type of vehicle, the amount of clothing, and another person being there, I don't even think we can assume plausibly that he had access. But even if you could say plausibly he did have access, we still have not employed anything more that he had knowledge. It's not as in, I believe it is in Mergerson, where, again, this court showed that just because, you know, someone had dominion and control, and who knows, it talked about you establish higher standard. And in Fields, for example, it was a joint occupancy case. One weapon was found underneath the mattress, and then the other one was in the open area in his house. And this court said, look, in a hidden mattress, without any fact-specific approach, we can't conclude he had knowledge and or access. But when another weapon is out in the open, in a house of which there is dominion and control, of which he has dominion and control, we can plausibly infer. And I think it's also important... The factual basis left everything about the gun out. Yes, it did. I guess maybe you should have gone to trial on the gun, right? Beyond a reasonable doubt, it sounds like these arguments are compelling, but if we're at a level of standard of proof, I think they're going to get up and say he wasn't just the driver, that he fled, then he resisted, consciousness of guilt, and proximity, right in front of it, and bullet, fits it. I know you're questioning that. And so then we would have to write a decision that said all of those factors together mean it's still implausible for the district court to say, by a preponderance, he knew about that gun. Again, I'm not arguing... Well, I am, but what is concerning is the fact that there is nothing connecting him. Dominion and control is insufficient. Driving away, understood. But lack thereof, there is no correlation to the weapon or the bullet he had to the bullets within that vehicle, or within that gun. And that's my concern, is there's nothing... I know this court has rejected the linkage argument from other circuits, but again, there's nothing connecting. Just because he was driving the vehicle is insufficient. And moreover, there's nothing in that vehicle that shows that his personal effects were around that weapon. There's no bills, there's no highly sensitive items. How many guns were found in the car in the end? There were two weapons in that vehicle. And moreover, this vehicle, government failed to show that this vehicle was even registered to his name. So we have him driving it for approximately an hour, running away from law enforcement. We don't know whether there were individuals in that car with him when he ran away, so we don't know why he ran away. Maybe it's because he's just a criminal, and that's what they do. But because we don't have any of those facts, we can't just assume to conclude that now he had actual knowledge and possession. And that's where I believe the issue... When it comes to government coming up and arguing, again, I think the government's argument is inherently that. It's just argument. And when we have a PSR that I believe chooses and selects what it desires to put forth despite the probation's office role and mission statement to be pursuing the fair administration of justice, I believe that that's what's concerning, is the selective application of facts, presenting them to the court, the court then being aware of the inconsistencies and then still relying on the inconsistencies and the PSR and not requiring government to raise a finger. And I say that respectfully to Judge Counts, who I very much enjoyed practicing before. But absent anything more, we have a gentleman driving a car and being held responsible for a weapon in that vehicle that's not registered and also tied to somebody else. All right, you saved some time for rebuttal, Mr. Kozak. Thank you, Mr. Fowler. Good morning, Your Honors. May it please the Court. Charles Fowler for the United States. I want to make two points this morning, the first with regard to the reliability of the facts and the PSR that the district court relied on and second with regard to the plausibility of the district court's conclusion from those facts. But before you do, it is interesting, the charging sequence here. I guess we don't have much insight into it, but the gun is charged, which would then mean you'd have to prove the gun beyond a reasonable doubt. Then the guilty plea ends up being to the bullet that he flips he turns over in prison. He gives them that undeniably. Yes, Your Honor. And then everyone just sort of agreed to put it off to sentencing, whether he could still get punished for the gun even though you didn't charge the gun. Yes, Your Honor. That's basically what happened. The indictment charged everything. So there were two guns on the back seat on the driver's side. Those were the only two guns in the car. There was 9mm ammunition sort of strewn around the car, and then there was the additional 9mm bullet on the defendant's person. It was all charged in the indictment. No one finds. No one's aware of that bullet. Not until he... That's correct. He says, here you go. Exactly. That's right. And basically at the guilty plea hearing, the AUSA comes in and recites the entire factual basis, essentially verbatim, out of the criminal complaint, which is at ROA 9 and 10, I believe. And at that point, the defendant gets up and says, I'm only... Mr. Kozak gets up and says, we're only accepting responsibility for part of the charged conduct. There's a discussion on the record, and everyone agrees the bullet is enough to establish guilt under 922G1, and so everyone moves forward with the understanding. Yeah. Most of the issue is, does he get acceptance for responsibility? He drives away, he fights them, he gets tased. On the other hand, he gives them the bullet that he pleads to. Correct. And he did end up getting it. Correct. Yes, Your Honor, and he did. And I'm going to jump... Yeah, go ahead. I think that leads into sort of my second point on plausibility, because really, I think the discussion and ultimate conclusion at sentencing on acceptance of responsibility, which I think it made sense to pursue that objection, but it's really in tension with the argument that's being made on appeal, because it's undisputed that the two guns on the back seat were basically in the same place. It was two 9mm pistols, one holding 10 rounds, that was the Ruger, a second one holding 17 rounds, that was the FNN, and it's that second one that the enhancement's based on. Again, ammunition strewn around the car. So although at the rearrangement the defendant said, I'm only taking responsibility for the one bullet and we're going to put everything off to sentencing, at sentencing the defendant comes in and says, we want to be very clear that we're taking responsibility for everything in the car but the 17-shot gun. And the reason is, and he actually goes even further to say, under 3E1.1, the commentary, he understands that by frivolously contesting relevant conduct, he would be perhaps risk losing acceptance credit, and so acknowledged that it would be potentially even frivolous to object to possessing all of the stuff in the car besides the one gun. And in the government's view, that is essentially conclusive as to the other gun. I don't see how he can come in at sentencing and say, I possess, I have knowledge of and access to everything in the car, including the 10-shot gun on the back seat under clothing, but not knowledge of and access to the 17-shot gun sitting right next to it. That's the FN? Correct, Your Honour. But the FN was underneath clothes and it corresponded to the magazine another passenger had. So it is, that one seems more detached from him. That is without a doubt a factual distinction and it perhaps suggests that one could plausibly find joint possession of that gun, which is sufficient. But the defendant, of course, had a 9mm bullet in his pocket too. And that is a factor that ties that gun to him as well. It was, again, directly behind him on the seat. The PSR found that it was in reach. We're talking about a two-seater sports car. If he hadn't fled and resisted, if it were just the bullet fits and it's behind the driver, do you still think in terms of preponderance and plausibility that? Under this, yes, Your Honour. I think that would be enough. I think the flight and the resistance reinforced that inference. We've got, of course, the additional fact that everyone in the car, including the individual who had a matching magazine in his pocket, denied, everyone denied having the gun. You've also got the PSR, the original PSR addendum mentioned this and in the amended one the probation officer left it out for some reason. But there's an additional factor, which is that this defendant had a prior 922 G1 that was sort of eerily parallel to this one. He was under supervision at the time of this offense because he had been in a car, pulled over, and found to have a gun on his person. Also denied possessing it initially and similarly fought off the officer and ended up having to go to the hospital. So very, very parallel to this offense and had the gun on his possession that time. So I think while the flight and the resistance helps, the totality of the circumstances make it at a bare minimum plausible for the district court to conclude he had knowledge and possession. I'll conclude where I started, which was this notion that there's a reliability issue with the facts and the PSR. One, that issue was not really raised below. I think the parties took the facts and the PSR at face value. There was no assertion or objection at sentencing that those facts were unreliable. And second, of course, this court has repeatedly held that when, as here, the facts and the PSR come from a law enforcement investigative report that contains factual detail, it's not just a bare arrest record documenting the fact of an arrest, but actually contains a recitation of facts that the officer observed, then that's a sufficiently reliable basis for facts and the PSR. The government would ask, then, that this court affirm the sentence. Thank you, Mr. Fowler. Mr. Kozik for Ravala. Thank you. Simply put, mere control or dominion over the place in which contraband or an illegal item is found by itself is not enough to establish constructive possession when there is a joint occupancy of a place. We have nothing more than joint occupancy and nothing more than someone being there without any evidence tying him to the knowledge of a weapon. That vehicle is not listed under his name. There are no personal effects within that vehicle. There is no admissions and or any indication by other defendants within the PSR that the gentleman knew of the weapon. Mere control, dominion and control is insufficient. The presence of a firearm, though, in plain view may indicate the requisite knowledge and access for constructive possession. We do not have a plain view issue. We have your quintessential weapon underneath a mattress, and this court has repeatedly found that when there is joint possession, a joint occupancy case, with nothing more, that's insufficient. What is key here is the bullet that was found in the defendant or the appellant's pocket was not tied to being anything similar to the weapon or anything found within that vehicle. The court, respectfully, reached out its own conclusion. There is nothing there. Just because one has a 9mm weapon or a bullet does not mean it is the same 9mm in the other weapons or their present, and that's what I believe was compelling in some of the cases before this court. Two questions. Yes, sir. Are you primarily arguing PSR paragraph supporting the enhancement is unreliable, or are you arguing the district court's finding of preponderance as to constructive possession is reversible? I think it's both, Your Honor. I think it's both, because the court respectfully committed error by relying on an unreliable PSR, and then it also committed error, again, respectfully. Separately. Separately, based on the fact that it concluded that the enhancement was applicable without government having to prove it. And then also arguably one, I don't know if it's even appropriate, is that he did not employ, respectfully, did not employ the fact-specific standard. The other question I had is you twice said principle and rebuttal argument. You twice said we've repeatedly held insufficient, but each time, and I'm sure you're right, each time you mention mattress, do you have a case where we've reversed as to sentencing enhancement with the standard being preponderance in a car? In other words, not constructive possession, room, gun under mattress. It's constructive possession, gun in car. The case is I'm responsible. What's your best case? The best case, I think, is Mergerson. Okay. But that was, I believe, on a sufficiency of the evidence. That was sufficiency of evidence. Yes. I would respectfully request an opportunity to submit. Oh, no. No, that's all right. That's all right. We'll find it. Thank you. Mergerson is, that's what I was thinking. And then Tate, you know, the U.S. v. Tate, where the court or the appellant attempted to argue that, you know, the same thing was applicable there. But what was given here is, oh, and also when it comes to Mergerson, in Mergerson Guy had a receipt in that case. Somebody else had a receipt for that weapon. And why I like to, I believe that Mergerson is analogous here is that not we don't have a receipt, but we have the parts of the weapon on someone else, indicating a receipt, which is very similar to Mergerson. And so respectfully we would request that the court grant the request and then remand. And in its remand order, we would respectfully request that the court, this court, provide clear guidance to the district court that on resentencing, if the court was to grant a request, that it not be permitted to consider additional evidence under U.S. v. Matthews, and that the remand should be specific to just sentencing and not having the government have the opportunity to prove the case again. I respectfully submit. Thank you, Mr. Kozik. Your case is under submission. We noticed that your court appointed, and we wish to thank you for your willingness to take the appointment and for your good work on behalf of your client. Thank you, Your Honor. It's my privilege to be here. Have a good day.